01
02
03
04
05
06
07
08

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

09 | JACQUELINE L. POSEY,                                ) CASE NO. C04-2168-RSL
                                                        )
10 |         Plaintiff,                                  )
                                                        )
11 | v.                                                  ) REPORT AND RECOMMENDATION
                                                        )
12 | JO ANNE B. BARNHART, Commissioner                   )
    | of Social Security,                                )
13 |                                                     )
    |         Defendant.                                 )
14 | _____ )

15        Plaintiff Jacqueline L. Posey proceeds through counsel in her appeal of a final decision of

16   the Commissioner of the Social Security Administration (Commissioner).  The Commissioner

17   denied plaintiff's applications for Disability Insurance benefits (DI) under Title II of the Social

18   Security Act (hereafter "the Act") and for Supplemental Security Income benefits (SSI) under

19   Title XVI of the Act after a hearing before the Honorable Edward Nichols, Administrative Law

20   Judge (ALJ).  Plaintiff appealed, and this Court issued an Order of Remand.  After a remand to

21   the state agency by the Honorable Cheri L. Filion, followed by a hearing before the Honorable

22   Edward Nichols, the Commissioner found plaintiff not entitled to any benefits prior to March 26,

23   2001.

24        Having considered the ALJ's decision, the administrative record (AR), and all memoranda

25   of record, it is recommended that this matter be REMANDED for an award of benefits.

26   / / /

REPORT AND RECOMMENDATION
PAGE -1

01 **FACTS AND PROCEDURAL HISTORY**

02 Plaintiff was born on XXXX[1], 1949 and has a high school education plus one year of

03 college level coursework.  Her prior work experience was as an assembler, telemarketer, and

04 janitor. (AR 425.)

05 Plaintiff protectively filed an application for SSI benefits on January 8, 1997 and an

06 application for DI benefits on February 3, 1997.  After a hearing before the ALJ, an unfavorable

07 decision was entered on November 9, 1998.  (AR 18-33.)  The Appeals Council denied plaintiff's

08 request for review on April 10, 2002 (AR 6-7) and plaintiff sought review in this Court.    *See*

09 *Posey v. Barnhart*, No. C02-1230MJP.

10 On May 16, 2003, the Honorable Marsha J. Pechman reversed the decision and remanded

11 it for further consideration of certain medical evidence, plaintiff's mental residual functional

12 capacity, and whether plaintiff's past work as a telemarketer constituted "past relevant work." (AR

13 1071-1072.)  Plaintiff also filed a new application for DI benefits (AR 594-597), which was heard

14 by the Honorable Cheri L. Filion on March 14, 2003 and remanded to Disability Determination

15 Services for evaluation of medical evidence not previously considered.  (AR 521, 1057.)

16 Following that evaluation and the reaffirmation of the agency's prior determination of non-

17 disability (AR 526-530), plaintiff's request for hearing was consolidated with the re-hearing of her

18 prior application, after which the Honorable Edward P. Nichols issued a decision, on June 21,

19 2004, denying benefits prior to March 26, 2001.  (AR 423-435.)

20 **JURISDICTION**

21 The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

22 **DISCUSSION**

23 ***Sequential Evaluation Process***

24 The Commissioner follows a five-step sequential evaluation process for determining

25 _____

26 [1] The plaintiff's date of birth is redacted back to the year of birth in accordance with the General Order of the Court regarding Public Access to Electronic Case Files, pursuant to the official policy on privacy adopted by the Judicial Conference of the United States.

REPORT AND RECOMMENDATION
PAGE -2

01  whether a claimant is disabled.  *See* 20 C.F.R. §§ 404.1520, 416.920 (2000).  At step one, it must

02  be determined whether the claimant is gainfully employed.  The ALJ found plaintiff has not

03  engaged in substantial gainful activity since November 9, 1995, the date of alleged onset of

04  disability.  (AR 27, 433.)  At step two, it must be determined whether a claimant suffers from a

05  severe impairment.  In the 1998 decision, the ALJ found plaintiff's depression to be a severe

06  impairment, with non-severe impairments of low back pain, neck pain, headaches, post-traumatic

07  stress disorder (PTSD), and hypertension.  (AR 27.)  In the 2004 decision following re-hearing,

08  the ALJ found plaintiff to have severe impairments consisting of a personality disorder, PTSD, and

09  dysthymia.  The ALJ also found plaintiff to have severe osteoarthritis in her knees commencing

10  on March 26, 2001.  (AR 433.)  Step three asks whether a claimant's impairments meet or equal

11  a listed impairment.  The ALJ found that plaintiff's medically determinable impairments do not

12  meet or equal a listed impairment.  (AR 27, 433-434.)  If a claimant's impairments do not meet

13  or equal a listing, the Commissioner must assess residual functional capacity (RFC) and determine

14  at step four whether the claimant has demonstrated an inability to perform past relevant work.

15  The ALJ assessed plaintiff's RFC and found she had no severe physical impairments prior to

16  March 26, 2001, and was able to perform her past work as an assembler and housekeeping

17  supervisor.  Following March 26, 2001 and the onset of the osteoarthritis in her knee, plaintiff was

18  not able to perform the exertional requirements of her past work.  The ALJ therefore proceeded

19  to step five of the sequential analysis, where the burden shifts to the Commissioner to demonstrate

20  that the claimant retains the capacity to make an adjustment to work that exists in significant levels

21  in the national economy.  The ALJ concluded that, after March 26, 2001, plaintiff was not able

22  to make a successful adjustment to other work consistent with her medically determinable

23  impairments, functional limitations, age, education and relevant work experience, and, therefore,

24  was disabled as of that date.  (AR 432-433.)

25      The ALJ found plaintiff's date last insured to be December 31, 2000, so she would have

26  to be disabled on or before that date in order to be found eligible for DI benefits.  (AR 433.)

REPORT AND RECOMMENDATION
PAGE -3

01 Because she was not found to be disabled until March 26, 2001, she did not qualify for DI

02 benefits.  However, SSI benefits are not dependent on insured status, so plaintiff became eligible

03 to receive these benefits as of the March 26, 2001 date of disability.  (AR 435.)

### *Standard of Review*

05        This Court's review of the ALJ's decision is limited to whether the decision is in

06 accordance with the law and his findings supported by substantial evidence in the record as a

07 whole.  *See Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993).  Substantial evidence means more

08 than a scintilla, but less than a preponderance; it means such relevant evidence as a reasonable

09 mind might accept as adequate to support a conclusion.  *Magallanes v. Bowen*, 881 F.2d 747, 750

10 (9th Cir. 1989).  If there is more than one rational interpretation, one of which supports the ALJ's

11 decision, the Court must uphold that decision.  *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir.

12 2002).

### *Position of the Parties*

14        Plaintiff contends that the Commissioner erred in failing to find that her mental impairments

15 met the Listing of Impairments.  Related to this point, plaintiff argues that the Commissioner did

16 not assign the proper weight to the opinion of Dr. Grekin, her treating doctor.  Plaintiff further

17 contends that the Commissioner did not properly perform a function- by-function assessment of

18 her mental abilities.  As a result, plaintiff asks that the case be remanded for an award of benefits.

19        In rather cursory fashion, the Commissioner urges affirmance, contending that the decision

20 was supported by substantial evidence.  The Commissioner also takes issue with the advancement

21 of certain arguments by plaintiff, specifically her citation of certain evidence, the contention that

22 she met the Listing of Impairments, and the treatment of vocational expert testimony, arguing that

23 these issues are irrelevant based on the limited nature of this Court's Order of Remand.  (Dkt. 17

24 at 5.)

25 / / /

26

REPORT AND RECOMMENDATION
PAGE -4

***Listing of Impairments for Mental Disorders***

The third step of the sequential evaluation of disability followed by the Commissioner in evaluating disability claims is to determine whether a disability claimant has any impairment which meets or equals an impairment described in the SSA's Listing of Impairments, 20 C.F.R. Part 404, Subpt. P, App. 1.  Although the Commissioner's determinations at steps four and five may be based on credibility assessments, step three determinations are made purely on the medical evidence, without consideration of age, education, or work experience.  *Bates v. Barnhart*, 222 F. Supp. 2d 1252, 1258 (D. Kan. 2002).  The listed impairments are considered so severe as to preclude substantial gainful activity.

An impairment simply names a disorder, while a listing sets out the criteria from which it can be determined whether the impairment is of sufficient severity to raise a presumption of disability.  *Petition of Sullivan,* 904 F.2d 826, 840 (3d Cir. 1990).  It is not enough for a claimant to show she has one of the listed impairments; she must show that her impairment meets or equals the severity and durational requirements in order to be found *per se* disabled at step three.  *Young v. Sullivan*, 911 F.2d 180, 181 (9th Cir. 1990).  In other words, the diagnosis of the impairment is not enough.  The claimant must show that she has the <u>findings</u> shown in the listing of that impairment.  *Key v. Heckler,* 754 F.2d 1545, 1549-50 (9th Cir. 1985).

The listing of impairments includes Mental Disorders, arranged in nine diagnostic categories.  20 C.F.R. Part 404, Subpt. P, App. 1 § 12.00.  Plaintiff contends that she meets the listing requirements of §§ 12.04 (affective disorders), 12.06 (anxiety related disorders) and 12.08 (personality disorders), and should have been found disabled on this basis.  Defendant argues that the ALJ was not bound by this Court's Order of Remand to consider any evidence other than the letter of Dr. Grekin and the report of Kathleen Ringwood, MSW, and, therefore, plaintiff's contention that she met the Listing of Impairments is irrelevant.  It is difficult to understand, however, how this Court's direction that the ALJ should "proceed with the sequential evaluation of plaintiff's disability claim insofar as it is based upon her mental impairments" (AR 1071) could

01   avoid a step three re-evaluation of plaintiff's mental impairments.

02          The ALJ found that plaintiff did not have any impairment or combination of impairments

03   listed in, or medically equal to, the Listing of Impairments, 20 C.F.R. Ch. III, Pt. 404, Subpt. P,

04   App. 1. (AR 433-34.)  In reaching this conclusion, the ALJ considered the conditions of

05   personality disorder, dysthymia, and PTSD, for which plaintiff met the diagnostic criteria of

06   paragraph A. (AR 431.)  Contrary to plaintiff's contention, the ALJ then assessed her functional

07   limitations using the four criteria in paragraph B of the listings: activities of daily living; social

08   functioning; concentration, persistence, or pace; and episodes of decompensation.

09   The ALJ found as follows:

10          Under part B of the listings, these impairments cause moderate restrictions in her
              ability to maintain social functioning.  However, the claimant's mental impairments
11          only cause mild restrictions in her activities of daily living and her ability to maintain
              concentration, persistence, and pace. There is no evidence that the claimant has ever
12          experienced episodes of decompensation for extended periods of time or that she
              meets any of the criteria under part "C" of the listings.

13

14   (AR 431.)

15          For a claimant to meet the required level of severity under the B criteria for "Affective

16   Disorders" § 12.04 (which includes dysthymia, or depressive disorder), "Anxiety Related

17   Disorders" § 12.06 (which includes PTSD), or "Personality Disorders" § 12.08, at least two levels

18   of functioning must be found to be markedly impaired. 20 C.F.R. Ch. III, Pt. 404, Subpt. P, App.

19   1, § 12.00 et seq. "Mental Disorders."  The ALJ found that none of the levels of functioning were

20   at the marked level.  The ALJ cited plaintiff's report of healthy activities of daily living and

21   minimal cognitive and social limitations as described in an April 18, 1997 psychiatric evaluation,

22   only occasional difficulty sleeping, a neatly groomed and dressed presentation in a mental status

23   examination, with normal stream of mental activity and no evidence of tangential or circumstantial

24   thinking.  The ALJ also cited Dr. Johnson's evaluation that plaintiff was oriented with good recent

25   and remote memory and reasonably good judgment.  Plaintiff reported keeping quite busy,

26   watching television, babysitting, preparing her own meals with her partner, maintaining a

REPORT AND RECOMMENDATION
PAGE -6

01 relationship with a few friends and family, enjoying working on her computer and maintaining a

02 computer bulletin board.  Dr. Johnson assessed plaintiff's Global Assessment of Functioning as

03 moderate, indicative of moderate symptoms and moderate impairment in social, occupational, or

04 school functioning.  (AR 426.)

05          Plaintiff cites evidence that would establish the diagnoses of dysthymia/major depressive

06 disorder, PTSD, and personality disorder, but the fact of these diagnoses is not at issue.  Rather,

07 the relevant question is whether plaintiff's levels of functioning were "markedly" impaired as a

08 result.  None of the medical sources cited by plaintiff in support of her contention that she meets

09 the Listings requirements found her to have marked impairment in these levels of functioning, with

10 the sole exception of Ms. Ringwood.  The ALJ provided sufficiently specific reasons for giving

11 Ms. Ringwood's opinion minimal weight as being inconsistent with plaintiff's own description of

12 her functional abilities and daily activities. (AR 427.)  Notably, not even Dr. Grekin, the opinion

13 of whom plaintiff argues the ALJ committed error in disregarding and who was supervising Ms.

14 Ringwood, reaches this conclusion.  Dr. Grekin found plaintiff's mental impairment in these areas

15 to be either mildly or moderately limited, but not markedly so.  (AR 921-924.)  Furthermore,

16 although opinions from medical sources will be considered on issues such as whether a claimant

17 meets or equals the requirements of the Listing of Impairments, the final responsibility for deciding

18 the issue is reserved to the Commissioner.  20 C.F.R §§ 404.1527(e)(2), 416.927(e)(2).

19          The ALJ's conclusion that plaintiff did not meet the requirements of the Listing of

20 Impairments at step three of the sequential analysis was supported by substantial evidence and will

21 not be disturbed.

22                      ***Opinion of Plaintiff's Treating Physician***

23          Plaintiff argues that the ALJ failed to articulate specific and legitimate reasons for

24 discrediting the opinions of her treating physician, Dr. Grekin, as he addressed her ability to

25

26

REPORT AND RECOMMENDATION
PAGE -7

01  maintain employment.[2]

02          The ALJ addressed Dr. Grekin's opinions as follows:

03      The record also contains several letters that were completed by Paul Grekin, M.D. the
        medical director for Seattle Counseling Services. Dr. Grekin reported on January 15,
04      1999, after the issuance of my decision and for purposes of appeal, that he has treated
        the claimant since July 1998. He stated in his January 15, 1999 letter that he agreed
05      with Dr. Bennett's conclusion that the claimant has dysthymia and a personality
        disorder with borderline and narcissistic traits. He also concurred with Ms.
06      Ringwood's assessment that the claimant's most significant area of difficulty is her
        limited ability to get along with other people. Dr. Grekin stated that the claimant has
07      responded to treatment with medication and therapy but her pattern of symptoms
        makes interactions with others very difficult. He noted that the claimant is extremely
08      sensitive to any implication of disagreement or conflict and will respond with rage and
        escape. The claimant feels that she must be in control of any situation if she is to
09      tolerate attending and has limited insight into this behavioral pattern. Dr. Grekin
        further opined that as a result of the claimant's personality disorder she would not be
10      able to maintain any employment. (Exhibit AC2 and 23F)

11      I have considered the opinion of Dr. Grekin, but do not give it controlling weight in
        this decision for several reasons. (FN 1) I accept Dr. Grekin's assessment that the
12      claimant would have difficulty getting along with supervisors or controlling people
        and would prefer to be in control of the situation when working with other
13      individuals. However, I do not agree with his conclusion that this limitation would
        prohibit all work activity. 20 C.F.R. §404.1527(e) and §416.927(e), state that some
14      issues are not medical issues regarding the nature and severity of an individual's
        impairments(s) but are administrative findings that are dispositive of a case; i.e., that
15      would direct the determination or decision of disability. SSR 96-5p indicates that the
        determination of whether a claimant is disabled and unable to perform work activity
16      is in part a vocational issue that is reserved for the Commissioner of Social Security.
        Further, SSR 96-5p points out that treating source opinions on issues that are
17      reserved to the Commissioner are never entitled to controlling weight or special
        significance. Giving controlling weight to such opinions would, in effect, confer upon
18      the treating source the authority to make the determination or decision about whether
        an individual is under a disability, and thus would be an abdication of the
19      Commissioner's statutory responsibility to determine whether an individual is
        disabled. (FN 2)

20
21      In this case, I have not been provided with any evidence that Dr. Grekin is a vocational
        expert who is trained in the determination of how mental limitations would
22      impact functioning in a routine work environment. Consequently, his opinion on
        disability is not entitled to controlling weight in this decision. Instead I have adopted
23      the mental limitations he identified as the claimant's treating psychiatrist, incorporated
        them into the claimant's residual functional capacity, and subsequently presented to

24      _____

25          [2] In plaintiff's opening brief, she refers only to Dr. Grekin in this assignment of error. In
        her reply brief, she also contends that the ALJ's reasons for rejecting Ms. Ringwood's opinions
26      were not adequate. An argument raised for the first time in a reply brief will generally not be
        considered. *Adriana Intern. Corp. v. Thoern*, 913 F.2d 1406, 1413 (9th Cir. 1990).

REPORT AND RECOMMENDATION
PAGE -8

01    the vocational expert.

02    I also note Dr. Grekin provided minimal documentary evidence to support his opinion.
      His notes are brief and the claimant reported that she is only seen by her psychiatrist
03    4 times per year.  Dr. Grekin instead relied on the notes provided by the claimant's
      social worker.  Therefore, he has had little direct contact with the claimant upon
04    which he based his opinion.  In addition, the claimant's testimony during the hearing
      was in direct conflict with Dr. Grekin's assessment.  The claimant testified that she
05    has a partner with whom she engaged in various activities including taking their dogs
      to the dog park and visiting with friends on a regular basis.  She denied that she has
06    any problems dealing with people and stated that while she does have problems with
      authority figures, this only occurs in a work situation and not in her day to day
07    activities.  This testimony and other documentary evidence in the record (Exhibit 6F)
      show that the claimant has quite healthy daily activities, a long term relationship,
08    friends, and social functioning that is not impacted at all in "day to day" situations.
      Dr. Grekin appears to simply be wrong in his assessment that the claimant is a
09    veritable recluse incapable of dealing with the public or friends.  Instead there appears
      to be a volitional aspect to the claimant's social limitations as documented by her lack
10    of difficulty interacting with authority figures as long as it is not in a "work situation".

11    This assessment is supported by a consultative psychiatric evaluation that was
      completed by Carla Hellekson, M.D. on January 29, 2001.  Dr. Hellekson reported
12    that the claimant is capable of performing simple and repetitive tasks without
      difficulty.  She also stated that the claimant's ability to do detailed and complex tasks
13    does not appear to be limited by depressive symptoms but instead by her attitude that
      "I'll do what I want to do when I want to do it" (Exhibit B10F, p.4).  Self indulgence
14    is not a disability.

15    (FN 1) It is well settled that such evidence created and submitted on appeal is entitled
      to less weight. *Weetman v. Bowen*, 877 F.2d 20 (9th Cir. 1989), citing *Key v. Heckler*,
16    754 F.2d 1545 (9th Cir. 1985, Ferguson, J. Dissenting).  *See also Meanel v. Apfel* 172
      F.3d 1111 (9th Cir. 1999).

17
18    (FN 2) *See also Paulson v. Bowen*, 836 F.2d 1249 (9th Cir. 1993), holding that such
      rulings are binding on all components of Social Security, including myself.

19    (AR 427-28.)

20         Several of the cases cited by the ALJ discussing the weight to be accorded evidence

21    submitted on appeal are inapposite to the present case.  They either address a situation where a

22    doctor's treatment notes were clearly inconsistent with a more favorable subsequent opinion letter

23    generated by the doctor after the claimant had received an adverse disability ruling, *see Weetman*,

24    877 F.2d at 23, or to a "sentence six" remand which requires a showing of good cause to consider

25    new and material evidence not in existence or available at the time of the hearing, *see Key*, 754

26    F.2d at 1551.

REPORT AND RECOMMENDATION
PAGE -9

01    The ALJ correctly noted that Dr. Grekin's opinion on plaintiff's employability was not

02  controlling.  As the ALJ states, it is the province of the Commissioner to determine the claimant's

03  ability to work, and the opinion of the treating physician is not controlling on the ultimate issue

04  of disability.  *Morgan v. Commissioner,* 169 F.3d 595, 600 (9th Cir. 1999)

05    More to the point, however, Dr. Grekin's conclusion about plaintiff's ability to work was

06  based on underlying observations and opinions regarding plaintiff's ability to get along with other

07  people, which certainly has direct relevance to that ultimate issue.  In that regard, Dr. Grekin

08  wrote in his report on January 15, 1999 as follows:

09    I assumed care of Ms. Posey in July 1998 after Dr. Bennett ended his work here.  I
10    have reviewed his and Ms. Ringwood's assessments as well as the court documents
      you provided.  I agree with Dr. Bennett's conclusion that Ms. Posey suffers from
      Dysthymia and Personality Disorder of Cluster B traits, specifically Borderline and
11    Narcissistic traits.  By history it appears she suffers exacerbations of her mood
      disorder that qualify for the diagnosis of Major Depression Recurrent.

12
      As indicated in Ms. Ringwood's assessment of September 4, 1998, Ms. Posey's most
13    significant area of difficulty is her limited ability to get along with other people.  This
      is a direct result of her Personality Disorder.  She is extremely sensitive to any
14    implication of disagreement or conflict.  She will respond with rage and escape.  She
      attends our clubhouse program regularly and the facilitator, Ms. Suter, has observed
15    these behaviors from Ms. Posey often.  Ms. Posey must be in control of any situation
      if she is to tolerate attending.  She has very limited insight into this pattern and
16    although Dr. Johnson reported no impairment of judgment in his evaluation for the
      court, her judgment in interpersonal matters is at least moderately impaired.

17
      The consequence of this pattern of Personality Disorder is that Ms. Posey cannot
18    maintain any employment, rendering her unable to support herself.  It is impossible to
      work for someone, and feel you must have complete control of the situation, without
19    getting into conflicts.  As she cannot tolerate the conflicts, experiencing them as
      assaults to her self-image, she escalates and flees.  It is not realistic to think she could
20    work in a self-employed position, because ultimately one must interact with customers
      to receive payment.

21
      Personality Disorders are long standing patterns of inflexible and maladaptive
22    perceiving, relating to and thinking about oneself and the environment.  The success
      at changing these patterns through treatment is limited and often the goal is to help
23    the patient at least maintain their basic needs and decrease their distress.  Ms Posey
      is nearly 50 years old.  She has had many years of developing and reinforcing her
24    personality traits because she has had no internal resources to replace them with
      something more adaptive.  It is highly unlikely she will make significant improvement
25    and to do so will require many years of treatment.  To accomplish that, she will have
      to remain with a source of care long enough.  This is of course unlikely because of her
26    propensity to flee.

REPORT AND RECOMMENDATION
PAGE -10

01   (AR 405, referenced in the ALJ's decision as AC2.)

02        Dr. Grekin wrote a follow up report on June 25, 1999:

03   I have continued to treat Ms. Posey since July of 1988. My assessment in the letter
     dated January 15, 1999 (copy enclosed) remains mostly unchanged. Ms. Posey
04   suffers from a Cluster B Personality Disorder leading to major impairments in her
     ability to get along with others. This personality disorder is probably the result of
05   sexual, emotional and the threat of physical abuse she suffered as a child from her
     family. A neighbor raped her when she was age 6. She has symptoms of Post
06   Traumatic Stress Disorder (PTSD) from these experiences, including hypervigilance,
     hyperactive startle, nightmares and avoidance of news that reminds her of the events.
07   The PTSD adds to her inability to trust others and sensitivity to the slightest affront.

08   Ms. Posey has partially responded to treatment with therapy and medication, but the
     pattern of symptoms continues to make interaction with others very difficult. This
09   deficit is very disabling in any effort to maintain employment.

10   (AR 11, referenced in the ALJ's decision as 23F.)

11        Dr. Grekin's statement of his opinions stand in contrast to the conclusory and

12   unsubstantiated opinion offered by the treating doctor in the *Meanel* case cited by the ALJ. (AR

13   427, n 1.) Dr. Grekin explained his opinion in detail, supported by reference to particular traits

14   and observations of plaintiff. The ALJ's statement that Dr. Grekin provided minimal documentary

15   evidence to support his opinion is not supported by the record. Dr. Grekin's two reports are

16   specific and to the point, and based on a significant number of office visits by plaintiff with not

17   only Dr. Grekin, but with other treatment providers at Seattle Counseling Service supervised by

18   Dr. Grekin and whose treatment notes he reviewed, as well as the evaluation of Dr. Bennett, who

19   was plaintiff's previous treatment provider. (AR 348-350.) The record does not support the

20   conclusion that Dr. Grekin had "little direct contact" with plaintiff, but rather shows that Dr.

21   Grekin saw plaintiff with the appropriate frequency expected of a psychiatrist in a mental health

22   treatment center working in conjunction with other mental health specialists such as Ms.

23   Ringwood and others whose treatment notes appear in the record. (*See* AR 348, 351-388, 690-

24   722, and 926-959.)

25        Dr. Grekin does not, as the ALJ paraphrases, assess plaintiff as "a veritable recluse

26   incapable of dealing with the public or friends" (AR 428), nor would such an assessment be

REPORT AND RECOMMENDATION
PAGE -11

01 necessary to establish her disability.  However, the records of plaintiff's treatment at Seattle

02 Counseling Service give strong support for Dr. Grekin's conclusion that plaintiff has a limited

03 ability to get along with other people due to the "longstanding inflexible and maladaptive patterns

04 that stem from her Cluster B Personality Disorder" (AR 405), difficulties that are manifestly <u>not</u>

05 limited to the workplace.  In April 1998, plaintiff reported reluctance to be involved in social

06 activities due to inability to get along with others and use of anger as a defense.  (AR 357.)

07 Plaintiff reported considerable difficulties getting along with other persons in the "clubhouse,"

08 which was a component of her treatment program at Seattle Counseling Service.  This difficulty

09 extended to not only the clubhouse manager (AR 351), but also to staff and other group members

10 (AR 693, 697, 708, 721), and led to her leaving the clubhouse (AR 695.)  Contrary to the ALJ's

11 conclusion that plaintiff's social limitations are volitional and based on self-indulgence (AR 428),

12 the record shows the contrary.  (*See* AR 692 ("I don't like being like this. I don't want to hurt

13 people.  I just can't control my verbal responses."))

14        The ALJ's characterization of  plaintiff's testimony as stating that she does not have any

15 problems dealing with people in her day-to-day activities (AR 428) is not supported by the record.

16 Plaintiff was asked by the ALJ if she had "any problem getting along with folks when you're

17 shopping or going out on the town, I mean, just a superficial day-to-day sort of--", to which

18 plaintiff answered, "No."  (AR 485.)  This exchange regarding "superficial contact" does not

19 provide substantial evidence to support the broad conclusion that plaintiff does not have any

20 problems dealing with people in her day-to-day activities.

21        Dr. Grekin's opinion regarding the manifestation of plaintiff's personality disorder as a

22 major impairment in her difficulty in getting along with other people is not contradicted by any

23 other medical provider.  Dr. Hellekson reported that plaintiff is capable of performing simple and

24 repetitive tasks without difficulty, but also noted that she had "not demonstrated an ability to

25 present to work on a consistent basis in the competitive work place over the past five years."  (AR

26 775.)  Where not contradicted by another physician, a treating or examining physician's opinion

REPORT AND RECOMMENDATION
PAGE -12

01  may be rejected only for "'clear and convincing'" reasons.  *Lester v. Chater*, 81 F.3d 821, 830 (9th

02  Cir. 1995) (quoting *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991)).  The ALJ in this

03  case did not state clear and convincing reasons for rejecting the opinion of plaintiff's treating

04  doctor, Dr. Grekin.

05                                              **<u>CONCLUSION</u>**

06          The Ninth Circuit has held that, "[w]here the Commissioner fails to provide adequate

07  reasons for rejecting the opinion of a treating or examining physician, we credit that opinion as 'a

08  matter of law.'"  *Lester*, 81 F.3d at 834 (quoting *Hammock v. Bowen*, 879 F.2d 498, 502 (9th Cir.

09  1989)).  In this case, the opinions of plaintiff's treating physician should be credited as a matter

10  of law.  Although Dr. Grekin's conclusion regarding the ultimate issue before the Commissioner

11  – plaintiff's ability to work – is not controlling, the vocational expert candidly admitted that he did

12  not factor plaintiff's mental impairments into his vocational analysis (AR 493), and the ALJ's

13  finding that plaintiff could perform her past work as an assembler and housekeeping supervisor

14  consequently lacks substantial basis.[3]

15          The Court has discretion to remand for further proceedings or to award benefits.  *See*

16  *Marcia v. Sullivan*, 900 F.2d 172, 176 (9th Cir. 1990).  The Court may direct an award of benefits

17  where "the record has been fully developed and further administrative proceedings would serve

18  no useful purpose."  *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002).  Three

19  separate administrative hearings have been held over the last seven years.  There are no

20  outstanding issues that must be resolved before a determination of disability can be made.  The

21  ALJ failed to provide legally sufficient reasons for rejecting the opinion of  plaintiff's treating

22  doctor on her mental limitations, and it is clear from the record that the ALJ would be required

23  to find plaintiff disabled if the evidence had been considered.  Therefore, this is a case in which it

24

25

26          [3] Even the state disability consultants who reviewed plaintiff's file concluded that  plaintiff
"should not supervise others." (AR 261.)

REPORT AND RECOMMENDATION
PAGE -13

01  is appropriate to remand with directions to award benefits.

02        DATED this  14th  day of June, 2005.

03

04  Mary Alice Theiler
    United States Magistrate Judge

05

06

07

08

09

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

REPORT AND RECOMMENDATION
PAGE -14